# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DOROTHY FRANCIS BYERS,**

   **Plaintiff,**

           **Case No. 3:19-cv-12247**

  **v.**          **Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

   **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Dorothy Francis Byers for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income in November 2013, alleging that she has been disabled since July 23, 2013,  as a result of herniated discs, bulging discs, and back pain. R. 195−204, 244. Plaintiff's applications were

denied initially and upon reconsideration. R. 75−110, 117−22, 126−31.[1] Plaintiff sought a *de novo* hearing before an administrative law judge. R. 132−36. Administrative Law Judge Janet McEneaney ("ALJ McEneaney") held a hearing on May 12, 2016, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 35−74, 633−91. In a decision dated September 2, 2016, ALJ McNeaney concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 23, 2013, Plaintiff's alleged disability onset date, through the date of the decision ("ALJ McNeaney's decision"). R. 16−29. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 10, 2017. R. 1−5. Plaintiff timely filed an appeal pursuant to 42 U.S.C. § 405(g). R. 722−23. On December 5, 2017, United States District Judge Brian R. Martinotti, by consent order to remand pursuant to sentence four of 42 U.S.C. § 405(g), remanded the action for further proceedings. R. 724−27.

On remand, the Appeals Council vacated ALJ McNeaney's decision and remanded the case with the following instructions:

The Appeals Council hereby vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for resolution of the following issue:

- The hearing decision does not contain an evaluation of the treating source opinion in Exhibit 12F. Dr. Roper, the claimant's physician, issued an opinion dated December 10, 2013, in which he stated the claimant was limited to less than sedentary exertion, with limitations in pushing/pulling and fine/gross manipulation, as well as postural and environmental limitations. Consideration of this opinion is necessary.

Upon remand the Administrative Law Judge will:

- Give consideration to the treating source opinion pursuant to the provisions

---

[1] Plaintiff was last insured for disability insurance benefits on December 31, 2015. R. 75, 82, 91, 100, 240, 259.

of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1520b and 416.920b). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-12, 83-14, 85-15 and 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

  In compliance with the above, the Administrative Law Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

R. 716–17.

On August 8, 2018, and January 10, 2019, a different ALJ, Jennifer Pustizzi ("ALJ Pustizzi"), held administrative hearings, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 564–94, 633–91. In a decision dated February 25, 2019, ALJ Pustizzi concluded that Plaintiff was not disabled from July 23, 2013, her alleged disability onset date, through the date of that decision. R. 540–55. On May 7, 2019, Plaintiff filed this appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1. On September

16, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 18.[2] On that same day, the case was reassigned to the undersigned. ECF No. 19. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli*

---

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

*v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 43 years old on her alleged disability onset date. R. 553.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 23, 2013, her alleged disability onset date, and the date of the decision. R. 543.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, varicose veins, obesity, affective disorder, anxiety disorder, and bipolar disorder. *Id*. The ALJ also found that Plaintiff's disorder of the right arm and the right foot was not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 543−45.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 545−52. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a housekeeper and hotel clerk. R. 553.

At step five, the ALJ found that a significant number of jobs−*i.e.*, approximately 172,010 jobs as an ink printer; approximately 67,490 jobs as a laminator; approximately 64,734 jobs as a document preparer−exist in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 554. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 23, 2013, her alleged disability onset date, through the date of the decision. R. 555.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 13. The Commissioner takes the position that his decision should be affirmed

in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 17.

## IV.    DISCUSSION

### A.    The ALJ's Decision Not to Order a Consultative Examination

Plaintiff contends that ALJ Pustizzi failed to conduct a "full and fair inquiry" because she failed to order a consultative psychological examination. *Plaintiff's Brief*, ECF No. 13, pp. 13−26. This Court disagrees.

"ALJs have a duty to develop a full and fair record in social security cases." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). However, "[t]he burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citations omitted); *see also Crocker v. Comm'r of Soc. Sec.*, No. CV 15-8231, 2017 WL 1181584, at *4 (D.N.J. Mar. 29, 2017) ("[T]he ALJ need not search for all relevant evidence available 'because such a requirement would shift the burden of proof.'") (quoting *Lynn v. Comm'r of Soc. Sec.*, No. 12-1200, 2013 WL 3854460, at *15 (W.D. Pa. July 24, 2013)). "The ALJ's only duty in this respect is to ensure that the claimant's complete medical history is developed on the record before finding that the claimant is not disabled." *Money*, 91 F. App'x at 215 (citing 20 C.F.R. §§ 404.1512(d), 416.912(d)). "[W]here a claimant is represented by counsel before the ALJ, an ALJ's 'passivity in developing the record will only be sufficient for remand or reversal when it has clearly prejudiced the claimant.'" *Crocker*, 2017 WL 1181584, at *4 (quoting *Cartagena v. Comm'r of Soc. Sec.*, No. 10-05712, 2012 WL 1161554, at *4 (D.N.J. Apr. 9, 2012)).

Here, Plaintiff contends that ALJ Pustizzi had an obligation to "explore for all relevant facts" and was required to order a consultative psychological examination. *Plaintiff's Brief*, ECF No. 13, pp. 17–21. However, as set forth above, it is Plaintiff who bears the burden of developing the record in the first instance; the ALJ need not search for all available relevant evidence. *Money*, 91 F. App'x at 215; *Crocker*, 2017 WL 1181584, at *4. Notably, the ALJ retains the discretion, but not the duty, to order a consultative examination. *See Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002) ("The decision to order a consultative examination is within the sound discretion of the ALJ[.]"); *Woodside v. Berryhill*, No. CV 18-10, 2019 WL 4140993, at *1 (W.D. Pa. Aug. 30, 2019) ("As the decision to order a consultative examination is within the sound discretion of the ALJ, the Court finds that the ALJ did not err in finding that the record was sufficient to render a decision here without the need to order a consultative examination."); *Haganey v. Comm'r of Soc. Sec.*, No. CV 17-7944, 2019 WL 192901, at *2 (D.N.J. Jan. 15, 2019) ("Plaintiff cites to no Third Circuit case law or authority to support the argument that the ALJ was required to order the consultative examination. The record was sufficient for the ALJ to make a proper determination. Thus, the ALJ was not required to send Plaintiff for a consultative examination and acted within his discretion."); *Reliford v. Comm'r of Soc. Sec.*, No. CV 16-457, 2017 WL 2829604, at *9 (D.N.J. June 30, 2017) (rejecting the plaintiff's argument that the ALJ was required to order a consultative examination or recontract treating sources and stating that "Plaintiff is incorrect that the ALJ 'was under a duty' to further develop the record through any particular method"). For example, an ALJ may seek a consultative examination if the claimant's medical sources cannot or will not provide sufficient medical evidence, or in an effort to resolve an inconsistency in the evidence, or if the evidence as a whole is insufficient to make a determination. 20 C.F.R. §§ 404.1517, 416.917 ("If your

11

medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added); 404.1519a(b), 416.919a(b) ("We *may* purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.") (emphasis added), 404.1520b(b)(2)(iii), 416.920b(b)(2)(iii) ("If the evidence in your case record is insufficient or inconsistent, we . . . *may* ask you to undergo a consultative examination at our expense") (emphasis added).

Next, to the extent that Plaintiff argues that ALJ Pustizzi erred in failing to order a consultative psychological examination because the record was inadequate in this regard, *Plaintiff's Brief*, ECF No. 13, pp. 13−26, that argument is not well taken. Here, ALJ Pustizzi reasonably exercised her discretion in deciding that she had sufficient information to make a disability determination. R. 545−52. As an initial matter, Plaintiff was represented by former counsel in the underlying administrative proceedings, including at the two hearings that ALJ Pustizzi conducted on August 8, 2018, and January 10, 2019. R. 564−94, 633−91.[3] Plaintiff's former counsel never asked ALJ Pustizzi to order a consultative examination or to keep the record open in order to obtain such an examination. *See id*. Moreover, in rendering her decision, ALJ Pustizzi detailed years of medical evidence, hearing testimony, and other evidence over several single-spaced typed pages, including evaluations by treating physicians, a consultative examination, and evaluations by reviewing state agency medical consultants. *Id*. For example, the ALJ specifically considered a consultative psychiatric evaluation performed by Christopher

---

[3] Plaintiff was represented by different counsel during the underlying administrative proceedings. *See* R. 564, 633.

Williamson, Psy.D., in June 2013, R. 550, as well as a psychiatric evaluation conducted by Mary J. Hermanns, A.P.N., R. 550−51. The ALJ also considered records and opinions from Muhammed Abbas, M.D., Plaintiff's long-time treating psychiatrist, who completed a medical source statement in March 2016. R. 551. The ALJ further considered treatment notes from 2014 through 2016, including those from Meridian Behavioral Health and from Plaintiff's primary care physician, Brian Roper, M.D., which included mental status assessments. R. 551. This Court finds that this record contained sufficient evidence regarding Plaintiff's mental impairments to make a disability determination. This Court therefore concludes that ALJ Pustizzi properly acted within her discretion when she failed to order a consultative psychological examination. *See Money*, 91 F. App'x at 215; *Thompson*, 45 F. App'x at 149; *Haganey*, 2019 WL 192901, at *2.

Plaintiff, however, insists that ALJ Pustizzi was required to order a consultative psychological examination because Dr. Williamson's consultative psychological examination, which was the only such examination in the record, predated Plaintiff's alleged disability onset date of July 23, 2013. *Plaintiff's Brief*, ECF No. 13, pp. 13−17. It is true that Dr. Williamson conducted his examination on June 24, 2013, approximately one month prior to Plaintiff's alleged disability onset date. R. 415−17. Although evidence that predates a claimant's alleged disability onset date is not entitled to any particular weight, an ALJ may nevertheless consider such evidence in considering the claim. *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 120 (3d Cir. Apr. 14, 2020); *cf.* 20 C.F.R. §§ 404.1512(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history *for at least the 12 months preceding the month in which you file your application* unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.") (emphasis added), 416.912(b)(1) (same).

13

Here, as previously discussed, ALJ Pustizzi specifically considered Dr. Williamson's examination and explained why she accorded "partial weight" to his clinical findings. R. 550. The Court sees no error with ALJ Pustizzi's consideration of Dr. Williamson's examination and findings in this regard. Based on this record and authority, then, the Court is not persuaded that the fact that Dr. Williamson's examination predated Plaintiff's alleged disability onset date required ALJ Pustizzi to order an additional consultative psychological examination. *See Louis*, 808 F. App'x at 120; *Thompson*, 45 F. App'x at 149.

Plaintiff also contends that a consultative psychological examination was necessary to support ALJ Pustizzi's RFC determination because she accorded only partial weight to the examinations and findings of Dr. Williamson and Dr. Abbas[4] and because the reviewing state agency physicians' assessments were outdated and addressed only Plaintiff's physical limitations. *Plaintiff's Brief*, ECF No. 13, pp. 13−26. Plaintiff therefore contends that ALJ Pustizzi improperly relied on her own lay assessment and opinion when she crafted the RFC. *Id*. This Court disagrees. A claimant's RFC is the most that the claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). Notably, it is the ALJ who is charged with determining a claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec*., 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also*

---

[4] ALJ Pustizzi's consideration of Dr. Abbas' opinions is addressed in the next section of this Opinion and Order.

14

*Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform sedentary work with certain additional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except lifting, carrying, pushing, and pulling 10 pounds occasionally and less than 10 pounds frequently; sitting for 6 hours in an 8-hour workday; standing for 2 hours in an 8-hour workday; walking for 2 hours in an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, knees, crouch and never crawl; never work at unprotected heights or with hazardous machinery; able to perform simple, routine, and repetitive tasks; and no interaction with the public.

R. 545. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, that in June 2013, Plaintiff denied significant issues of depression and/or suicidal ideation and panic attacks; she minimized issues of paranoia and could complete simple mathematical calculations of addition and subtraction; she could repeat up to five digits forwards and four digits backwards; her abstract reasoning appeared concrete; she was well oriented to time, place and person, as well as to recent current events; she could recall three out of three common objects at five and ten minute intervals but was unable to complete serial sevens accurately; her overall fund of knowledge appeared to be in the low average range. R. 550.  The ALJ also found that, in January 2014, Plaintiff reported that she was medically cleared to go to work but did not do so because of back pain; that she had been trying to collect Social Security disability; she

15

denied any change in mood, irritability, and signs or symptoms of depression or any affective

disorder; she was cooperative "but became angry when told letters would not be given to her[;]"

her affect was full and her mood was congruent with no evidence of a thought disorder or

psychosis, delusions, paranoia, or hallucinations with focused and organized thoughts; and she

was  alert and fully oriented with good concentration and intact short-term and long-term

memory. R. 550−51. Mental status reports from Meridian Mental Health in March and April

2014 noted fair memory, a linear thought process, a cooperative attitude and, despite anxious

mood and limited insight and judgment, she had "okay" attention, concentration, and normal

thought content. R. 551. In May 2014, Plaintiff had fair insight and judgment, good mood,

cooperative attitude, stable attention and concentration, fair memory, and logical thought

processes. *Id*.  From 2011 through 2017, Dr. Roper consistently noted that Plaintiff's affect was

grossly normal and oriented to person, place, and time. *Id*. Plaintiff's mental status exams,

conducted by Meridian Behavioral Health from June 2015 through January 2016, noted full

orientation, fair memory, stable attention and concentration, cooperative attitude, good mood,

logical thought process, and fair insight and judgment. *Id*. In March 2016, Dr. Abbas noted that

Plaintiff had fair memory, full orientation, "okay" attention, concentration, and mood, and

despite an anxious affect and tangential thought process, she had normal thought contention,

insight and judgment. *Id*. Meridian Behavioral Health treatment notes from May 2016 through

May 2017 indicated that Plaintiff's memory, attention, concentration, thought content, insight,

and judgment were within normal limits. *Id*. In October 2017, Plaintiff reported working at a

local motel. *Id*. In February 2018, Plaintiff's memory was characterized as "okay;" she had no

problems with attention and concentration and, although she reported stress and feeling a little

off, she had normal thought content and fair judgment. R. 550−51. Plaintiff reported daily

activities that were inconsistent with an inability to perform even simple, routine tasks. R. 551.

Plaintiff reported that she cared for her special needs son, drove him to and from school and took

him to ROTC training; she also performs household chores and cares for her personal needs. R.

546. However, Plaintiff testified that she needed reminders from her family to complete these

activities of daily living. R. 545. The record unquestionably contains substantial evidence to

support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at

554; *Plummer*, 186 F.3d at 429.

Plaintiff contends that a consultative psychological examination was nevertheless

necessary to support the RFC finding once ALJ Pustizzi accorded only partial weight to the

assessments and opinions of Drs. Williamson and Abbas because, without such an examination,

ALJ Pustizzi simply had no expert basis upon which to rely in determining Plaintiff's RFC.

However, ALJ Pustizzi did not, as Plaintiff contends, simply rely on her lay opinion in making

the RFC determination. As detailed above, ALJ Pustizzi relied on extensive medical and other

record evidence when crafting the RFC. R. 545–52. Moreover, "[t]here is no legal requirement

that a physician have made the particular findings that an ALJ adopts in the course of

determining an RFC." *Titterington v. Barnhart*, 174 Fed. App'x 6, 11 (3d Cir. 2006); *see also

Chandler*, 667 F.3d at 362 (stating that an ALJ "is not precluded from reaching RFC

determinations without outside medical expert review of each fact incorporated into the

decision"). Moreover, as previously noted, it is the ALJ—not a physician—who makes the

ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361.

Plaintiff nevertheless insists that relevant authority required ALJ Pustizzi to order a

consultative psychological examination. For example, she contends that the Social Security Act

"provides that the Agency must make 'every reasonable effort to ensure that a qualified

17

psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.'" *Plaintiff's Brief*, ECF No. 13, p. 18 (quoting 42 U.S.C. § 421(h)(1)). However, "[b]ecause 42 U.S.C. § 421(d), which covers hearings before an ALJ, is excluded from § 421(h)'s purview, an ALJ is not required to employ the assistance of a qualified psychiatrist or psychologist in making an initial determination of mental impairment." *Plummer*, 186 F.3d at 433; *see also Malik v. Berryhill*, No. CV 18-248, 2018 WL 6445541, at *9 (D. Del. Dec. 10, 2018) ("The Third Circuit has explained that section 421(h) does not apply to decisions made by an ALJ.[] Therefore, a review by a qualified psychiatrist or psychologist was not required for the ALJ to determine that plaintiff was not impaired by her non-severe depression.") (citations omitted).

Plaintiff next contends that SSR 96-6p "mandates that a qualified psychologist or psychiatrist specifically addresses whether a claimant's combined impairments are equivalent to a listing." *Plaintiff's Brief*, ECF No. 13, p. 18. As a preliminary matter, SSR 96-6p, 1996 WL 374180, was rescinded and replaced by SSR 17-2p, effective March 27, 2017. In any event, Plaintiff misconstrues SSR 96-6p as requiring ALJ Pustizzi to order a consultative psychological examination in this case. is intended to, *inter alia*, "clarify policy interpretations regarding administrative law judge and Appeals Council responsibility for obtaining opinions of physicians or psychologists designated by the Commissioner regarding equivalence to listings in the Listing of Impairments[.]" *Id*. at *1. SSR 96-6p explicitly recognizes that the ALJ (or the Appeals Council) "is responsible for deciding the ultimate legal question whether a listing is met or equaled." *Id*. at *3. SSR 96-6p further provides, *inter alia*, as follows:

> As the trier of the facts, an administrative law judge or the Appeals Council is not
> bound by a finding by a State agency medical or psychological consultant or other
> program physician or psychologist as to whether an individual's impairment(s) is
> equivalent in severity to any impairment in the Listing of Impairments. However,

longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

*Id*.[5] SSR. 96-6p goes on to clarify that "[t]he signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Id*. "Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review." *Id*. Therefore, "the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant." *Id*.

Here, the SSR 96-6p requirements were met. The record contains Disability Determination and Transmittal forms, which were signed by state agency physicians and which reflect the first two levels of administrative review. R. 75–110. ALJ Pustizzi considered these opinions and explained why she afforded little weight to the opinions expressed therein. R. 552.

Although Plaintiff complains that these state agency physicians did not consider her mental impairments when they reviewed the record in December 2013 and April 2014, it is significant that Plaintiff identified only physical impairments (herniated discs, bulging discs, and back pain) when she applied for benefits in November 2013. R. 244. Plaintiff denied significant issues of depression, suicidal ideation, panic attacks, medical issues, substance use, and

---

[5] SSR 96-6p was rescinded and replaced by SSR 17-2p, effective March 27, 2017.

minimized issues of paranoia during her June 2013 examination by Dr. Williamson and she

denied to APN Hermann in January 2014 any symptoms of depression and affective disorder. R.

550−51. Although Dr. Abbas diagnosed Plaintiff with a major depressive disorder and

generalized anxiety disorder in March 2016, R. 496, Plaintiff has not persuaded this Court that

this evidence compelled ALJ Pustizzi to order a consultative psychological examination. As

previously discussed, the ALJ retains the discretion, not the duty, to order a consultative

examination. *See Thompson*, 45 F. App'x at 149; *Woodside*, 2019 WL 4140993, at *1; *Haganey*,

2019 WL 192901, at *2; *Reliford*, 2017 WL 2829604, at *9; 20 C.F.R. §§ 404.1517,

404.1519a(b), 404.1520b(b)(2)(iii), 416.917, 416.919a(b), 416.920b(b)(2)(iii). "The Court does

not read SSR 96-6p as creating such a requirement, either. SSR 96-6p simply tells an ALJ what

he or she must do with an existing finding by a physician or psychologist 'designated by the

Commissioner' on the equivalency issue – receive it into the record and treat it like any other

medical opinion from a nonexamining source [.]" *Walker v. Colvin*, No. 2:15-CV-00900, 2016

WL 491724, at *4 (W.D. Pa. Feb. 9, 2016). That is precisely what ALJ Pustizzi did in this case.

R. 552. Notably, SSR 96-6p

> does not, however, impose an affirmative duty on an ALJ to seek out a medical
> opinion on the equivalency issue. Nor does not it make the absence of a medical
> opinion as to all of a claimant's impairments at the initial level of review – even
> those that arise after the state agency's determination – cause for remand in every
> case. Rather, the decision of whether to obtain a medical opinion is left entirely up
> to the ALJ.

*Id*. In any event, even assuming that SSR 96-6p did create a such a requirement, ALJ Pustizzi's

failure to obtain a consultative psychological expert's opinion as to whether Plaintiff's mental

impairments met or medically equaled a listed impairment amounts to, at most, harmless error.

*See Shinseki v. Sanders*, 556 U.S. 396, 409−10 (2009) ("[T]he burden of showing that an error is

harmful normally falls upon the party attacking the agency's determination. . . . [T]he party

seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case"). Plaintiff, who bears the burden at step three, made no attempt to explain how any of her mental impairments met or medically equaled a listed impairment. *See generally Plaintiff's Brief*, ECF No. 13; *see also Burnett*, 220 F.3d at 120 n.2 (stating that "the burden is on the claimant to present medical findings that show his or her impairment matches a listing or is equal in severity to a listed impairment"); *cf. Cosby v. Comm'r of Soc. Sec*., 231 F. App'x 140, 146 (3d Cir. 2007) (finding it significant that the claimant did "not argue or even suggest which listing the ALJ should have applied" or "point to any medical evidence ignored by the ALJ that would show that [her] impairments medically equaled one of the listings"). For all these reasons, then, Plaintiff has not established that she is entitled to remand on this basis. *See Shinseki*, 556 U.S. at 409−10; *Walker*, 2016 WL 491724, at *5 (finding that, even assuming 96-6p imposed such a requirement, any error in the ALJ's "failure" to obtain a medical expert's opinion as to whether the claimant's physical impairments equaled any listings amounted to harmless error where the claimant "has not made any attempt to explain how her coronary artery disease and related physical impairments met or equaled any of the listings or even which listings might have been satisfied").

Plaintiff also contends that 20 C.F.R. § 404.1520a supports her contention that ALJ Pustizzi had a duty to order a consultative psychological examination. *Plaintiff's Brief*, ECF No. 13, pp. 19−20. This Court disagrees. Section 404.1520a describes "a special technique" to be used when addressing mental impairments "at each level *in the administrative review process*[,]" which does not include the administrative decision by an ALJ. *Id*. at § 404.1520a(a) (emphasis added); *see also id*. at 416.920a(a) (same). Instead, other rules apply at the ALJ and Appeals

Council levels. *Id.* at 404.1520a(e) (identifying rules that apply at those levels); *see also id*. at §

416.920a(e) (same). Accordingly, 20 C.F.R. § 404.1520a does not contradict or undermine the

proposition that the ALJ has the obligation, but not the duty, to order a consultative

psychological examination.

For all these reasons, ALJ Pustizzi did not err by failing to order a psychological

consultative examination.

### B. Consideration of Dr. Muhammad Abbas' opinion

Plaintiff also argues that ALJ Pustizzi's evaluation of Dr. Abbas' treating source opinion

violated relevant authority. *Plaintiff's Brief*, ECF No. 13, pp. 21–32. Plaintiff's argument is not

well taken.

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord

treating physicians' reports great weight, especially when their opinions reflect expert judgment

based on a continuing observation of the patient's condition over a prolonged period of time.'"

*Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*,

225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352,

355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight")

(citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's

opinions "are entitled to substantial and at times even controlling weight") (citations omitted).

However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent

with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F.

App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v.

Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion

of a treating physician when it is unsupported and inconsistent with the other evidence in the

record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). An ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

In March 2016, Dr. Abbas, Plaintiff's long-time treating psychiatrist, completed a mental health questionnaire in which he diagnosed major depressive disorder beginning in 2013, manifested by anhedonia, sleep disturbance, decreased energy, and difficulty concentrating, as well as generalized anxiety disorder, manifested by motor tension, autonomic hyperactivity, apprehensive expectation, and vigilance and scanning. R. 496. On mental status examination, Dr. Abbas commented, Plaintiff "seem[s] depressed and unable to calm herself or relax." R. 497. Financial concerns and her son's care cause her to "[p]erseverate[ ]." *Id*. According to Dr. Abbas, Plaintiff had mild difficulties in maintaining social functioning and episodes of deterioration or decompensation in work or work-like settings, a moderate restriction of activities of daily living, and marked deficiencies of concentration, persistence or pace. She would be absent from work as a result of her impairments more than four days per month. R. 498.

ALJ Pustizzi considered this opinion and assigned it only "partial weight," reasoning as follows:

> [A] mental status exam performed at Meridian Mental Health through April 2014, consistently noted fair memory, linear thought process, and cooperative attitude. Despite anxious mood, limited insight and judgment, she had "okay" attention, concentration, and normal thought content (Exhibit 10F, pages 9-13 [R. 451–55 (reflecting Dr. Abbas's examinations in 2014)]). Notably in May 2014, she had fair insight and judgment, good mood, cooperative attitude, stable attention and concentration, fair memory, and logical thought processes (Exhibit 10F, page 14 [R. 456 (excerpt from Dr. Abbas's examination dated May 27, 2014)]). During this time, Dr. Roper consistently noted that her affect was grossly normal and oriented to person, place, and time (Exhibit 7F, pages 3-6; Exhibit 11F; Exhibit 17F & Exhibit 19F).
>
> Updated mental status exams from June 2015 through January 2016, noted full orientation, fair memory, stable attention and concentration, and cooperative attitude. In addition, she had a good mood, logical thought process and fair insight and judgment (Exhibit 15F, pages 5-12 [R. 503–12 (reflecting Dr. Abbas's examinations)]).
>
> In March 2016, Dr. Abbas opined that the claimant had difficulty concentrating, decreased energy, anhedonia, motor tension, apprehensive expectation. With that,

she did not have persistent irrational fear, recurrent panic attacks, obsessions, compulsions, or intrusive recollections. He further opined that the claimant had moderate restriction of activities of daily living, mild difficulties in maintaining social functioning, mild episodes of decompensation, and marked deficiencies of concentration, persistence, or pace resulting on failure to complete tasks in a timely manner. Lastly, the claimant would be absent more than four days per month (Exhibit 14F [R. 494−98]). The undersigned accords the opinion partial weight as he is a treating source but he reported that the claimant's symptoms began in 2013, not consistent with record from his own facility. In addition, marked concentration, moderate restriction daily living, and 4 absences is not consistent with mental status exams noted above with lack of symptoms reported in office records.

Notably, a March 22, 2016, treatment note from Dr. Abbas indicate fair memory, full orientation, okay attention and concentration, and okay mood. Despite an anxious affect and tangential thought process, she had normal thought content, insight and judgment. The claimant reported doing better and denied any new anxiety and anxiety (Exhibit 15F, page 13 [R. 511]).

R. 551. The Court finds no error in ALJ Pustizzi's evaluation of Dr. Abbas' opinion.

Plaintiff challenges this evaluation, arguing that ALJ Pustizzi did not explicitly "acknowledge" the factors outlined in 20 C.F.R. §§ 404.1527(c) and 416.927(c) when she assessed Dr. Abbas's opinion. *Plaintiff's Brief*, ECF No. 13, pp. 26−27. Plaintiff's argument is not well taken. As a preliminary matter, "[a]n ALJ need not explicitly discuss each factor in his [or her] decision." *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *6 (D.N.J. Jan. 31, 2019); *Samah v. Comm'r of Soc. Sec.*, No. CV 17-08592, 2018 WL 6178862, at *5 (D.N.J. Nov. 27, 2018) (same) (collecting cases). "Instead, an ALJ need only 'explain his [or her] evaluation of the medical evidence for the district court to meaningfully review whether his [or her] reasoning accords with the regulation's standards.'" *Samah*, 2018 WL 6178862, at *5 (quoting *Laverde v. Colvin*, No. 14-cv-1242, 2015 WL 5559984, at *6 n.3 (W.D. Pa. Sept. 21, 2015)); *see also Jones*, 364 F.3d at 505 (stating that the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit

meaningful review"); *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019)

("Although the ALJ did not specifically identify each factor [under 20 C.F.R. § 404.1527(c)], all

relevant factors were considered throughout the lengthy, detailed opinion.") (citations omitted).

ALJ Pustizzi did just that in this case. Although the ALJ did not explicitly go through a factor-

by-factor analysis, she specifically considered Dr. Abbas' numerous examinations of Plaintiff

from 2014 through 2016, and factored in Dr. Abbas's treating relationship with Plaintiff when

explaining the weight assigned to that opinion.  *See* R. 551 (detailing examinations from 2014

through 2016 and noting that Dr. Abbas is a "treating source" when deciding what weight to

accord to his opinion); *see also* R. 544 (detailing mental status examinations from 2015 and 2016

(citing Exhibit 15F, pp. 5–12, R. 503–10)); 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2).

In addition, as detailed above, ALJ Pustizzi explained that she discounted Dr. Abbas's opinion

because it was inconsistent with his own treatment records and, specifically, that on March 22,

2016, Dr. Abbas noted that Plaintiff had fair memory, full orientation, "okay" attention,

concentration and mood and that, despite an anxious affect and tangential thought process, she

had normal thought content, insight, and judgment while Plaintiff also reported that she was

doing better and denied any new anxiety. R. 551; *see also* 20 C.F.R. §§ 404.1527(c)(3), (4),

416.927(c)(3), (4). Although Plaintiff complains that ALJ Pustizzi "failed to address Dr. Abbas

[sic] specialty, psychiatry" and give more weight to that specialty opinion, *Plaintiff's Brief*, ECF

No. 13, p. 27 (citing 20 C.F.R. § 404.1527(c)(5)), ALJ Pustizzi explicitly considered Dr. Abbas's

March 2016 opinion, which clearly identified Dr. Abbas as a psychiatrist. R. 498 (identifying Dr.

Abbas as a psychiatrist in his opinion dated March 22, 2016), 551 (considering Dr. Abbas's

March 2016 opinion). Even if the ALJ erred by not explicitly considering Dr. Abbas's

specialization, any such error would be harmless.  Plaintiff has not explained how consideration

of this specialty would have changed the weight given to Dr. Abbas's opinion in light of the fact

that his opinion was inconsistent with his own records. *Plaintiff's Brief*, ECF No. 13, p. 27; *see*

*also Shinseki*, 556 U.S. at 409−10; *Fuehrer v. Saul*, No. CV 16-5248, 2019 WL 5550634, at *5

(E.D. Pa. Oct. 28, 2019) ("Here, too, any error by the ALJ in failing to explicitly address the

factors [under 20 C.F.R. §§ 404.1527(c), 416.927(c)] cited by Plaintiff is harmless, as Plaintiff

has not shown how consideration of these factors would have affected his evaluation of either

opinion, given his conclusion that the opinions were inconsistent with the physicians' own

treatment notes.") (collecting cases).

Plaintiff also insists that Dr. Abbas's characterization of Plaintiff's attention and

concentration as "okay" or "stable" does not mean that she was "normal" or that such findings

were necessarily inconsistent with his conclusion that she was markedly limited in the areas of

concentration, persistence, or pace. *Plaintiff's Brief*, ECF No. 13, pp. 28−30. Plaintiff's

arguments are not well taken. The Court finds that the ALJ properly discounted Dr. Abbas's

opinions based on a reasonable reading of Plaintiff's treatment notes to the extent that they were

internally inconsistent or inconsistent with other record evidence. *See* R. 551; *see also* 20 C.F.R.

§§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the

record as a whole, the more weight we will give to that medical opinion."); *Smith v. Astrue*, 359

F. App'x 313, 316 (3d Cir. 2009) (concluding that, where the treating source "medical opinion is

contradicted by several pieces of evidence in the record and also contains internal

inconsistencies, it is not entitled to the level of deference otherwise accorded to a treating

physician's opinion"); *Metzger v. Saul*, No. CV 19-270, 2019 WL 3530442, at *7 (E.D. Pa. Aug.

2, 2019) ("Moreover, courts have consistently held that an ALJ may grant less weight to a

treating physician's opinion where it conflicts with his or her own treatment notes.") (citations

omitted); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *7 (D.N.J. Jan. 31, 2019) ("The ALJ here reasonably discounted the opinion at issue upon a reasonable reading of seemingly contradictory treatment notes."). Accordingly, the Court finds that substantial evidence supports ALJ Pustizzi's decision to discount Dr. Abbas's opinion because it was internally inconsistent and not consistent with other substantial record evidence.

Plaintiff goes on to criticize ALJ Pustizzi's consideration of Plaintiff's daily activities. *Plaintiff's Brief*, ECF No. 13, pp. 30−31. However, a claimant's activities of daily living are but one relevant factor that an ALJ may consider in making an RFC determination and assessing a claimant's subjective complaints. *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity. . . and was permitted to consider them to evaluate the credibility of [the claimant's] subjective complaints of pain and other symptoms.") (citations omitted); 20 C.F.R. §§ 404.1529(a), (c)(3)(i), 416.929(a), (c)(3)(i). Here, the ALJ's decision reflects careful consideration of Plaintiff's daily life activities. R. 552. Moreover, even if Plaintiff cites to evidence that she believes supports her position, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon

situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Finally, to the extent that Plaintiff contends that ALJ Pustizzi's alleged errors in assessing Dr. Abbas' opinion means that the RFC is not supported by substantial evidence, this Court disagrees. As explained above, ALJ Pustizzi did not err when evaluating Dr. Abbas' opinion. Moreover, an ALJ need include only "credibly established" limitations in her RFC determination. *See Rutherford*, 399 F.3d at 554; *Zirnsak*, 777 F.3d at 615. For the reasons previously discussed, ALJ Puttizzi's RFC sufficiently captured Plaintiff's credibly established limitations.

In short, ALJ Pustizzi's evaluation of Dr. Abbas' opinion and RFC determination enjoy substantial support in the record.

## V.     CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

        **IT IS SO ORDERED.**


Date:  March 9, 2021                    *s/Norah McCann King*
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE